# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL SENTRY SECURITY SYSTEMS, INC.<br>    4022 Stonehaven Rd<br>    South Euclid, OH, 44121,<br><br>ELECTRICALIFORNIA<br>    9105 Tropico Drive<br>    La Mesa, CA  91941,<br><br>RICK KEYSER,<br>    2952 Brooks Hollow Dr.<br>    Fremont, NE 68025,<br><br>        and<br><br>TYLER BARRETTE,<br>    13 Jay Way<br>    Rochester, NH  03868,<br><br>Individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>SIEMENS INDUSTRY, INC.<br>    100 Technology Dr.,<br>    Alpharetta, GA, 30005,<br><br>        Defendant. | **Case No. 1:21-cv-01072-CJN**<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs National Sentry Security Systems, Inc., Electricalifornia, Rick Keyser, and Tyler

Barrette (collectively, "Plaintiffs"), by their undersigned counsel, file this Amended Class Action

Complaint on behalf of themselves and a class of all similarly situated electrician businesses and

3601007 v1

individual consumers against Siemens Industry, Inc. ("Siemens" or "Defendant").  Plaintiffs base the following allegations upon personal information and belief, and the investigation of counsel:

## INTRODUCTION

1.     Arc Fault Circuit Interrupters ("AFCI") are a type of circuit breaker with electronic components designed to protect homes and businesses from an electrical arc fault—a potential dangerous electrical condition where the electrical current travels through an unintended medium, usually the air, instead of through the circuit as intended.  Unintended and dangerous electrical arcs pose a serious risk of an electrical fire and of injury.

2.     AFCI breakers are complex.  Manufacturers must design and use sophisticated circuitry to identify dangerous electrical arcing and trip the breaker in response.  Using advanced electronic circuitry, AFCI breakers monitor aspects of the circuit and current to identify potential signatures of electrical arcs.  When the AFCI breaker identifies a dangerous electrical arc, the breaker trips to stop the current and prevent the electrical arc from causing a fire or other harm.

3.     AFCI manufactures, however, have an additional hurdle—harmless electrical arcing frequently occurs in homes.  For instance, many common household appliances create arcing signatures either during their normal operation or when the appliance is turned on or stopped.  Despite the presence of electrical arcing signatures, those arcs are harmless and do not pose a threat of a fire or other injury.  As such, AFCI breakers should not trip in their presence.

4.      Properly designed and functioning AFCI breakers, therefore, must be capable of distinguishing harmless arcs, when the breaker should not trip, from dangerous arcs, when the breaker should trip.  AFCI breakers that fail to distinguish between dangerous and harmless arcs and trip in the presence of both, exhibit "nuisances tripping", or frequent and unnecessary tripping that renders the AFCI breaker unusable.

5.      Siemens is one of several companies that has designed and manufactured AFCI breakers. It offers standalone AFCI breakers and combo breakers that perform multiple functions. Siemens, however, has made available for sale defective AFCI breakers that fail to adequately distinguish between harmless and dangerous electrical arcs. As a result, Siemens' defective AFCI breakers suffer from nuisance tripping, where the breakers frequently and unnecessarily trip even where no dangerous electrical arc is present and there is no risk of electrical harm.

6.      Siemens recognizes that faulty AFCI breakers impose significant costs on homeowners and electricians. In advertising its electrical services, Siemens recognizes that "[t]he costs of downtime are great, in terms of both lost productivity and equipment replacement, as are the costs of operating inefficient or unsafe systems."

7.      Consumers of Siemens' AFCI breakers and electricians have suffered those types of damages. Siemens' defective AFCI breakers are effectively unusable and need to be replaced because their frequent nuisance tripping prevents circuits controlled by the breaker from operating at all, meaning appliances and outlets within the circuit are frequently receiving no current. Consumers and electricians have purchased defective Siemens' AFCI breakers that needed to be replaced, losing the purchase value of the breakers.

8.      Additionally, electricians who purchased and used defective Siemens' AFCI breakers—often, electricians must use Siemens' breakers when their customer uses a Siemens electrical panel to house their home's circuit breakers—lost the value of the breaker, had to purchase additional Siemens or another manufacturer's AFCI breakers, and spent uncompensated time investigating the cause of nuisance tripping only to find the cause was the defective Siemens' AFCI breaker.

9.     Plaintiffs have similarly suffered damages.  Plaintiff National Sentry Security Systems, Inc. ("NSSS") is a security and electricity services company that, as part of its business, purchases and installs AFCI and other breakers manufactured by Siemens and other manufacturers. It has purchased hundreds of Siemens' AFCI breakers and has seen many, brand-new AFCI breakers suffer from nuisance tripping.  Plaintiff NSSS has spent significant time and resources investigating the potential causes of the tripping, only to find that the issue was with the Siemens' AFCI breaker.  In many cases, NSSS resolved the tripping simply by replacing the Siemens' AFCI breaker at its own cost.

10.     Electricalifornia is an electrical company formed in 2016 that, as part of its services, purchases and installs AFCI and other breakers manufactured by Siemens and other manufacturers. Electricalifornia has experienced frequent nuisance tripping with Siemens' AFCI breakers. Electricalifornia has spent significant time and resources investigating Siemens' AFCI breakers suffering from nuisance tripping, only to find the issue was with the Siemens' AFCI breaker.  In many cases, Electricalifornia resolved the tripping issue by replacing the Siemens' AFCI breakers at its own cost.

11.     Plaintiff Rick Keyser suffered damages because of defective Siemens' AFCI breakers.  He installed Siemens' AFCI breakers and other circuit breakers at his home, which uses a Siemens' electrical panel box.  Keyser is a trained and certified electrician.  Upon installing Siemens' AFCI breakers, he noticed several of the breakers frequently and unexpectedly tripped. After he investigated the potential causes of the nuisance tripping, he determined that no dangerous electrical arcing was occurring at his home.  He replaced the defective Siemens' AFCI breakers with new ones, and the nuisance tripping resolved.  Keyser, therefore, paid for defective Siemens' AFCI breakers that were unusable.

12.     Plaintiff Tyler Barrette suffered damages because of Siemens' defective AFCI breakers.  Barrette bought a house in 2020, which was a new build containing a Siemens panel box and Siemens' AFCI breakers.  Soon after he moved in, he started having issues with his Siemens AFCI breakers tripping repeatedly.  He called an electrician who investigated and found no evidence of any dangerous arcing.  The electrician replaced the malfunctioning Siemens' AFCI breakers with new Siemens' AFCI breakers, but the new breakers continued to nuisance trip.  The electrician then replaced one of the Siemens' AFCI with a competitor's product—a Square D AFCI breaker—and once he did, the tripping stopped immediately.  Because of local code, however, the electrician could not leave a Square D breaker in a Siemens panel box.  So, Barrette had to pay $1500 to replace his entire panel box and all his breakers.  He has had no issues with tripping since then.

13.     Plaintiffs brings this action against Siemens on behalf of a proposed Consumer Class and Electrician Subclass, and in the alternative, a California, Ohio, and Nebraska Class of consumers.  Plaintiffs allege Siemens: (1) fraudulently concealed the defect in its breakers; (2) negligently omitted the defect in its breakers; (3) violated the implied warranty of merchantability; (4) violated the federal Magnuson-Moss Warranty Act; (5) was unjust enriched by making available for sale defective breakers; (6) violated Nebraska's Unfair and Deceptive Trade Practices Act; (7) violated New Hampshire's Consumer Protection Act; (8) violated California's Unfair Competition Law; and (9) violated California's Consumer Legal Remedies Act.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, which affords federal courts with original jurisdiction over cases where any member of the plaintiff class is a citizen of a state different from any defendant,

and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  Here, each Plaintiff is diverse from Defendants because Plaintiffs reside in Ohio, Nebraska, California, and New Hampshire, and Siemens Industry, Inc. resides in Alpharetta, Georgia, where it is headquartered and Delaware, where it is incorporated.  Plaintiffs allege that, in the aggregate, the claims of all Class members exceed $5,000,000, exclusive of interest and costs.

15.     Siemens Industry Inc. has consented to the Court's personal jurisdiction for purposes of this litigation.

16.     Siemens Industry Inc. has consented to venue in this District for purposes of this litigation.

## PARTIES

17.     **Plaintiff** National Sentry Security Systems, Inc. ("NSSS") is a security and electrical company located in South Euclid, Ohio.  NSSS provides electrical services to its consumers, including, among other things, performing residential circuitry work, installing and replacing circuit breakers, investigating and resolving the cause of a tripped circuit breaker.  NSSS incurred costs purchasing Siemens AFCI breakers that failed to function properly and suffered from nuisance tripping, spent time investigating the potential causes of the tripping, and ultimately had to replace the Siemens AFCI breakers.

18.     **Plaintiff** Electricalifornia is an electrical company and sole proprietorship owned by Drew Montoya and located in La Mesa, California.  Electricalifornia provides electrical services to its customers, including, among other things, performing residential and commercial circuitry work, installing and replacing circuit breakers, and investigating and resolving the cause of tripped circuit breakers.  Electricalifornia incurred costs purchasing Siemens AFCI breakers that failed to

function properly and suffered from nuisance tripping, spent time investigating the potential causes of the tripping, and ultimately had to replace misfunctioning AFCI breakers.

19. **Plaintiff** Rick Keyser is a Nebraska resident who has purchased and installed Siemens' AFCI breakers in his home that inappropriately tripped when no dangerous electrical arcing occurred. Keyser replaced the defective Siemens' AFCI breakers.

20. **Plaintiff** Tyler Barrette is a New Hampshire resident who, in addition to other costs, paid to replace Siemens' AFCI breakers in his home, which inappropriately tripped when no dangerous electrical arcing was present.

21. **Defendant** Siemens Industry Inc. is listed as being headquartered at 100 Technology Dr., Alpharetta, GA, 30005 and manufactures, sells, and provides a warranty for Siemens AFCI breakers to United States customers.

## FACTUAL BACKGROUND

22. Siemens AG is a multinational conglomerate company that operates in 190 countries, and maintains approximately 285 production and manufacturing facilities globally, including the United States. Its USA operations include manufacturing plants and subsidiaries located throughout the country. Siemens AG purports to have invested approximately $40 billion in the U.S., including more than $1 billion a year in research and development and over $50 million annual to train its existing workforce in the U.S.[1]

23. Each year, Siemens AG earns in tens of billions of dollars of worldwide revenue. Over the past decade, Siemens AG has averaged nearly $90 billion annually in gross revenue. It nets tens of billions of dollars in revenue from sales in the U.S. alone, which it describes as its

---

[1] *Siemens in the USA. For the USA.*, Siemens.com (last visited Nov. 20, 2020), https://new.siemens.com/us/en/company/siemens-in-the-usa.html.

largest market. In fiscal year 2019, for instance, Siemens AG reported $26.5 billion in U.S. revenue.[2]

24.     In both the U.S. and abroad, Siemens and Siemens AG provide a massive range of products and services, including in industries like infrastructure and buildings, automation, energy, lighting, electrical, medical, and transportation and logistics.  Siemens and Siemens AG provide these products and services for residential homes and businesses alike.

25.     For homeowners, Siemens may be best known for their residential and household electrical products.  Siemens designs and manufactures electrical panel boxes (load centers) and circuit breakers for residential use.  Electrical panel boxes (load centers) and circuit breakers in homes help distribute power throughout the house and provide safety measures that protect against electrical fires and injuries caused by electrical surges, electrical arcs, ground faults, short circuits, and other unintended electrical issues.

**A.     Residential Arc Fault Circuit Interrupters**

26.     Circuit breakers are an essential device in modern homes and provide important safety controls that protect against electrically caused injuries and fires.  Circuit breakers are placed in an electrical panel box (load centers) and redirect electricity through individual closed circuits to different rooms and appliances throughout the home.

27.     Standard circuit breakers have been used for decades, previously being equipped with a fuse that "blows" in the presence of too much current.  When the current exceeds a threshold level, the wires in the fuse would overheat and melt, breaking the circuit.

---

[2] *About Us*, Siemens.com (last visited Nov. 20, 2020), https://new.siemens.com/us/en/company/about.html

28.     Modern circuit breakers perform the same function—they "trip" to break the circuit and cut off electricity when the current exceeds safe levels.  Unlike traditional breakers, however, modern standard breakers are multi-use.  Rather than relying on melted fuses to break the circuit, modern breakers use a contact controlled by thermomagnetic parts activated by dangerous levels of current that trip the circuit breaker.  When a standard circuit breaker trips due to excess current, the circuit can be reengaged by switching the circuit breaker back to the "on" position after the cause of the excessive current is removed.

29.     In addition to circuit breakers that protect against electrical excessive current (overcurrent), advanced modern breakers protect against two additional electrical dangers: ground faults and electrical arcing.

30.     Ground faults occur when the return flow of electricity is through the ground, rather than through the intended circuit.  Ground faults are sometimes described as electrical leakage because the electricity is "leaking" out of the circuit to the ground.

31.     Modern Ground Fault Circuit Interrupters ("GFCI") identify and trip in the presence of a ground fault.  GFCIs are designed either as a circuit breaker to be installed in an electrical panel box (load centers) or as an outlet installed directly in a wall (usually, GFCI outlets will have buttons stating "test" and "reset").  GFCIs work by comparing outgoing and incoming current.  If the currents do not match (4-6mA), meaning some of the current is "leaking" out of the circuit, then there is a ground fault and the GFCI breaker or outlet will trip to break the circuit.  To function properly, GFCI breakers are designed to identify and distinguish between harmless and dangerous electrical ground faults so that the circuit breaker trips only upon identifying a dangerous electrical ground fault (4-6 mA).

32.     The National Electric Code ("NEC") —a set of residential, housing and other occupancies electrical standards adopted in many cities and states—first required the use of GFCIs in the 1970s.

33.     Arc Fault Circuit Interrupters ("AFCI") are the newest residential breaker type and are designed to trip in the presence of unintended and dangerous electrical arc faults.  Like properly functioning GFCI breakers, AFCI breakers are designed to identify and distinguish between harmless and dangerous electrical arcs so that the circuit breaker trips only upon identifying a dangerous electrical arc.

34.     An arc fault is a prolonged electrical circuit created when current flows through an unintended medium, usually directly through the air or loose connections, instead of through the wires in a circuit.



**Image 1.** An example of electrical arcing.  The current is flowing through the air between two nodes, completing a circuit.  The arc typically emits light and heat.

35.     Unintentional, dangerous electrical arcing in a home may be caused by various issues, including loose electrical connections, frayed or broken wires, or the operation of old or broken household appliances.  Unintended electrical arcs can occur in almost any part of a circuit,

including wire splices, circuit breaker connections, wall switches, receptacles, or within appliances.

36.     While some harmless electrical arching is common in homes and appliance (like when an appliance starts up), dangerous and unintended electrical arcing can create high intensity heating at the point of the arc and sometimes result in a flash of light, called an arc flash. Unintended and uncontrolled electrical arcs can reach temperatures of 10,000 degrees Fahrenheit, enough to create sparks and ignite wood, fabric, and debris.  For that reason, prolonged dangerous and unintended electrical arcs pose a significant fire risk in homes.  Indeed, approximately half of the 48,000 annual residential fires in the U.S. are attributed to arc faults.

37.     AFCIs are designed to identify and protect against dangerous electrical arcs.  To do so, each manufacturer has developed its own, unique advanced electronic circuitry that measures fluctuations in the frequency, variations, and amplitude of a current's waveform.  The advanced circuitry used in AFCIs is intended to detect prolonged, dangerous arcs by identifying non-periodic or sporadic current waveforms.  When the AFCI detects a waveform indicative of a dangerous arc, the AFCI breaker trips to prevent the possibility of a fire.

38.     The NEC first recommended the installation of AFCIs in 1999 for use in dwelling unit bedroom circuits.

39.     At the time, the NEC described AFCIs as "new devices" and as "circuit breakers with electronic circuitry capable of recognizing the chaotic waveforms characteristic of electrical arcing.  The devices are calibrated internally to trip, based on the likely ignition energy being released in the arc."  The NEC described the "fault current levels" at which AFCIs should trip as those capable of "produc[ing] secondary ignition of adjacent combustible materials[.]" The NEC

adopted the standards set forth by the Underwriters Laboratories, an organization that provides standards for electrical products.

40.    By 2017, the NEC required that AFCIs be installed in all new residential construction and in practically every room of a home, including: areas when receptacle boxes (load centers) are replaced, and in all 120 volt, single phase, 15 and 20 ampere branch circuits supplying lighting and power outlets or devices installed in essentially all dwelling unit rooms like kitchens, family rooms, dining rooms, living rooms, parlors, libraries, dens, bedrooms, sunrooms, recreation rooms, closets, hallways, laundry areas, or similar rooms or areas.  As a result of these rules, AFCIs have become a commonly required and frequently used breaker in modern homes.

41.    AFCI breaker manufacturers have, in the past, faced unique challenges associated with AFCIs: not all arcing signatures and waveform fluctuations indicate a dangerous arc. Waveform fluctuations occur all the time when current flows and not all indicators of an arc represent a potentially dangerous or fire-causing electrical arc.

42.    Devices with electric motors like vacuums, treadmills and power tools produce normal electrical arcs during normal operation that present no danger of a fire.  Arcing also frequently occurs when power outlets or appliances initially pull electricity from the outlet upon being turned on.

43.    The National Electric Manufacturers Association ("NEMA") is an American National Standards Institute- accredited Standards Development Organization made up of business leaders, electrical experts, engineers, scientists, and technicians. NEMA has indicated that many home electrical products (which it calls "HEPs") may generate waveforms that appear to be electrical arcs: "When many electrical products are initially energized, it is common for them to draw a high amount of current for a few cycles as the product reaches its normal operating

performance level.  This start-up or inrush current is typically several times the operating current of the product.  If the maximum current during start-up (or for any short period of time during the operation of the HEP is kept below 100 amperes RMS, unwanted tripping of AFCIs, and standard breakers, should not occur."[3]

44.     As such, many temporary, harmless arcs that appear in a circuit do not pose a risk of a fire.  AFCI breakers, therefore, must be capable of identifying those harmless arcs and distinguishing them from dangerous, unintended, and prolonged arcs that may pose a risk of a fire. Properly functioning AFCIs should only trip in the presence of dangerous arcs.

45.     When an AFCI breaker is unnecessarily tripping in the presence of harmless arcs, electricians refer to the issue as "nuisance tripping."

46.     Nuisance tripping has long been recognized as an issue for AFCI breakers.  When AFCIs were introduced in the NEC, AFCI breaker manufacturers acknowledged "[o]ne of the most difficult aspects of the new technology is coming up with a device that knows the difference between an arc from normal operations, such as unplugging a cord or opening a switch, and a destructive arc.  In short, the devices cannot nuisance trip."[4]

47.     Indeed, "[w]hen AFCIs were first introduced there were some initial tripping issues" but experts in the field claimed that most "AFCI manufacturers have . . . continued to improve AFCIs" and "virtually eliminat[ed] past [tripping] issues."[5]

---

[3] *Recommendations on AFCI Home Electrical Product Compatibility*, NEMA, at 5 (2011), https://structuretech1.com/wp-content/uploads/2016/02/AFCI-Tripping-NEMA-Compatibility.pdf.
[4] Frederic P. Hartwell, *Illustrated Changes in the 1999 NEC – Part 1 of 4*, EC&M (Sep. 1, 1998), https://www.ecmweb.com/content/article/20893354/illustrated-changes-in-the-1999-nec-part-1-of-4
[5] *Fast Facts*, afcisafety.org (last visited Nov. 23, 2020), https://www.afcisafety.org/afci-nec-considerations/fast-facts/#1477663207955-7e3d73a0-2845

48.     Siemens, however, was not one of those manufacturers who capably resolved nuisance tripping in its AFCIs.  Rather than "virtually eliminating" their nuisance tripping issues, Siemens' AFCI breakers continue to exhibit excessive nuisance tripping rates that cost electricians and consumers time and money to address.

**B.     Siemens Omitted and Concealed its AFCI Breakers' High Nuisance Trip Rate**

49.     Siemens sells a variety of circuit breakers for residential homes, including several types of standard breakers, GFCIs, AFCIs, and combination breakers designed to be installed in Siemens electrical panels.  Siemens' breakers are available for purchase from Siemens' Sales and Distributor locations,[6] including general hardware stores, like Home Depot, Lowes, and Ace Hardware, and are available through online sellers and wholesalers, like Amazon.

50.     Additionally, Siemens purports to "offer a complete portfolio of electrical services, including preventive maintenance, emergency services, technical support, equipment reconditioning, retrofits and upgrades: that "[l]imit risk of downtime", "[i]ncrease safety", "[e]xtend equipment lifecycle", "[r]educe operating costs", and "[m]eet regulatory compliance[.]"[7]

51.     Siemens acknowledges that "Arc Flash Mitigation Solutions" must be capable of "ensur[ing] the reliability, uptime, performance, safety, and lifecycle management of your electrical systems infrastructure[,]" including "[a]void[ing] system downtime."[8]  Siemens advises that "[p]oorly maintained electrical systems can result in costly downtime" but claims "Siemens can address potential problems before they shut you down with reliable electrical service."[9]

---

[6] *See Sales & Distributor Locator*, Siemens.com (last visited Nov. 23, 2020), https://new.siemens.com/us/en/company/distributorlocator.html
[7] *Electrical Services*, Siemens.com (last visited Nov. 23, 2020), https://new.siemens.com/us/en/products/buildingtechnologies/services/electrical.html
[8] *Id.*
[9] *Id.*

52.     Siemens also recognizes the costs imposed by improperly functioning arc flash protection devices like AFCIs.  On its website, Siemens notes that "[t]he costs of downtime are great, in terms of both lost productivity and equipment replacement, as are the costs of operating inefficient or unsafe systems"[10] caused by improper arc fault management.

53.     Siemens residential arc fault products include its AFCI Circuit Breakers, Combination AFCI ("CAFCI") breakers, and its AFCI/GFCI dual functioning breakers for both 1 and 2 poles.  Siemens states that its AFCI breakers "mitigate the effects of arcing faults by functioning to de-energize the circuit when an arc-fault it detected."[11]

54.     Siemens advertises its "1-pole Combination Type AFCI Breakers" and recommends they "be installed in dwelling unit kitchens, family rooms, dining rooms, living rooms, parlors, libraries, dens, bedrooms, sunrooms, recreation rooms, closets, hallways, laundry areas, or similar rooms or areas."  It claims these breakers can "provide a valuable analysis tool to help electricians pinpoint [arc fault] . . . trip[s]."[12]

55.     Siemens describes its "2-pole Combination Type AFCI Breakers" as an "[i]ndustry exclusive multi-wiring/shared neutral solution."[13]

56.     According to Siemens, both its 1-pole and 2-pole AFCI breaker types indicate whether a trip was due to an arc fault or to an electrical surge.  Siemens claims its AFCI breakers "[p]rovide electricians valuable time savings in installation."[14]

---

[10] *Id.*
[11] *Residential AFCI Circuit Breakers*, Siemens.com (last visited, Nov. 23, 2020), https://new.siemens.com/us/en/products/energy/low-voltage/residential-circuit-breakers/residential-afci-circuit-breakers.html
[12] *Id.*
[13] *Id.*
[14] *Id.*

57.     Rather than saving electricians and customers time, however, Siemens' AFCI breakers are defective and frequently and unnecessarily trip in the presence of common and harmless arcs.  These breakers fail to properly identify and trip upon the presences of dangerous arcs and instead, trip upon the presence of no or otherwise, harmless electrical arcing.  As a result, electricians and customers using Siemens' AFCI breakers often experience nuisance tripping.

58.     Unlike standard breakers or GFCIs, AFCI breakers vary significantly between manufacturers.  For both standard breakers and GFCIs, the mechanism causing the trip is straightforward and universal.  All standard breakers rely on the same mechanism to guard against the same harm: an increase in voltage to an unsafe level energizes magnets within the breaker that pull the circuit shut.  GFCIs also rely on similar mechanical devices to guard against ground faults: a sensor that identifies and causes the breaker to trip upon a discrepancy in incoming and outgoing current, which indicates electricity is "escaping" the circuit through a ground fault.

59.     AFCIs, however, do not operate using a simple, universal mechanism.  Rather, each manufacturer must design and develop circuitry capable of identifying and evaluating the waveforms of the electrical current.  Each manufacturer has adjusted the circumstances, like the amount or length of prolonged unexpected waveforms, under which an AFCI breaker will trip.

60.     AFCI breakers, therefore, vary in design, circuitry, function, and sensitivity between manufactures.  As NEMA indicated, upon introducing AFCIs, manufacturers have had to adjust the design of their AFCIs to prevent nuisance tripping.  Where an AFCI breaker is not designed or manufactured properly, the breaker may improperly trip in the presence of harmless arcs causing frequent nuisance tripping.  AFCI breakers exhibiting nuisance tripping must be replaced with a properly functioning AFCI breaker.  Electricians and consumers who installed Siemens' AFCI breakers have found that, upon installation of Siemens' AFCI breakers, they

experience frequent, unexplainable tripping even where no identifiable arcing is occurring.  These include brand-new, newly installed AFCI breakers that, were they functioning properly, should not be tripping unless an actual, dangerous arc existed in the circuit.  Those breakers trip, however, even where there is no such arcing.

61.    Siemens knew that its AFCI breakers experienced abnormally high rates of nuisance tripping but omitted and concealed that fact from electricians and consumers.

62.    Siemens, for instance, has received numerous complaints directly and online describing its AFCIs high rate of nuisance tripping.   In one electrician forum, a frustrated electrician wrote a post in 2019 titled "Siemens AFCI nuisance tripping … help!":

> I ran 4 new circuits, in an old house, all new wires, new Siemens AFCI breakers. All 4 have been tripping. One Samsung refrig., two countertop outlets, one microwave. In KY, all new circuits must be AFCI. Replaced all 4 new AFCI breakers with new ones. Microwave and ref are working with second new breakers. Now the two kit. countertop ones are tripping AGAIN.[15]

63.    In a post from 2017, a member wrote:

> I have installed some new Siemens afci/gfci breakers and am having some AFCI trips that I [need to] find a solution for. The customer was using a Griddle and when they turned the Kitchen-aid mixer on and the breaker tripped as soon as the Mixer was turned on. The mixer alone does not trip the breaker but the mixer with the griddle or toaster will trip the breaker with and AFCI fault. I was able to recreate the fault on the second kitchen circuit. I also tried the mixer with the coffee maker and the breaker didn't trip. I am wondering if someone has had any problems similar to mine.[16]

64.    That same year, another member wrote:

> We also had about a year long stretch where we were having lots of issues with Siemens AFCI breakers. Lots of nuisance tripping, especially with the two pole. That seems to have

---

[15] *Siemens AFCI Nuisance Tripping…Help!*, Mike Holt's Forum (last visited, Nov. 24, 2020), https://forums.mikeholt.com/threads/siemens-afci-nuisance-tripping-help.147943/
[16] *Siemens AFCI/GFCI Help Needed*, Mike Holt's Forum (last visited, Nov. 24, 2020), https://forums.mikeholt.com/threads/siemens-afci-gfci-help-needed.132773/

calmed down now in the last 6 months. The Siemens rep claims there wasn't anything wrong.[17]

65.     In another forum, an electrician posted "Siemens AFCI/GFCI Breaker Woes":

So........customer calls last week and says lighting circuit keeps tripping. I go over and find that the fixture seems to have had a short in it from the factory. Installed a pigtail as a temporary light and all fixed. Got a call today saying all the kitchen circuits are tripping. So I went over to confirm. Sure enough they are tripping microwave, toaster, mixer. I brought my 1 7/8" hammer drill in and only managed to trip one. I checked all the connections and am out of ideas.[18]

66.     Additionally, one reviewer on Amazon's website wrote:

Junk, 2 out of the 4 I purchased constantly trip. What a waste of money. Replaced with standard 15 amp breaker and no problems. Tried trouble shooting by ensuring all power sources and switches were unplugged/off and yet it still tripped. Do not recommend this product[19]

67.     A reviewer on Home Depot's website wrote:

Siemen's AFCI breaker is ridiculously sensitive to nuisance trips. The breaker tripped when the toaster popped, the microwave was started and at all times of the day or night when the refrigerator cycled.[20]

68.     On an electricians' forum on the website, reddit.com, one user wrote:

Just had a kitchen remodel and electrical panel replacement (needed more dedicated circuit breakers for the kitchen). Everything through licensed contractors with full permits.

A dedicated line was run to the microwave (combination microwave/hood over our range). It is a very nice, higher end 8-year old GE microwave.

---

[17] *Filters for AFCI Nuisance Tripping*, Mike Holt's Forum (last visited, Nov. 24, 2020), https://forums.mikeholt.com/threads/filters-for-afci-nuisance-tripping.132330/

[18] *Siemens AFCI/GFCI Breaker Woes*, Electrician Talk (last visited, Nov. 24, 2020), https://www.electriciantalk.com/threads/siemens-afci-gfci-breaker-woes.205809/

[19] *Community Activity – N8Dogg*, Amazon.com (last visited, Nov. 24, 2020) https://www.amazon.com/gp/profile/amzn1.account.AESSXN3AC4LAGWFDMKXKKX3OEE GA/ref=cm_cr_srp_d_gw_btm?ie=UTF8

[20] *Type QAF 20 Amp Double-Pole Combination AFCI Circuit Breaker by Siemens*, HomeDepot.com (last visited, Nov. 24, 2020), https://www.homedepot.com/p/Siemens-Type-QAF-20-Amp-Double-Pole-Combination-AFCI-Circuit-Breaker-Q220AFCP/202253104

The breaker for this dedicated circuit is a Dual Function AFCI/GFCI Circuit Breaker (Siemens, 15 amp). The microwave manual recommends a dedicated 15 amp circuit. The microwave works fine for a few days, then suddenly it starts tripping the breaker within 5 seconds of starting it, no matter what is in it. I've tried popcorn, cup of water, full microwave dinner. Doesn't seem to matter what else is going on in the house (e.g. A/C, oven on) or even if the hood fan is being used. Then it will be Ok for a while, and then the same problem again.[21]

69.    The many public complaints and others made directly to Siemens describing Siemens' AFCI breakers as exhibiting nuisance tripping, put Siemens on notice that it had made available for sale defective Siemens' AFCI breakers that do not function properly or as advertised.

70.    Additionally, one electrical distributor reported that Siemens' tested supposedly defective breakers and confirmed that they trip in inappropriate circumstances, leading to nuisance tripping. [22]   Siemens tested hundreds of breakers returned as defective and found they trip in at least three scenarios: (1) an actual arc, (2) where an appliance is drawing high amps, or (3) electronic noise caused by the loads on the circuits.[23]   Siemens deemed these breakers non-defective[24] even though its AFCI breakers should *only* be tripping in *one* of those circumstances— where there is a dangerous arc.  Thus, Siemens knew from its own testing that its breakers were not adequately distinguishing between dangerous arcs and arcing signatures caused by common household appliances or electronic noise, and that those defects led to unnecessary nuisance tripping.

---

[21] *Microwave Tripping New Combination AFCI/GFCI Breaker – Seeking Advice Please*, Reddit.com (last visited, Nov. 24, 2020), https://www.reddit.com/r/electricians/comments/954fvv/microwave_tripping_new_combination_afci_gfci/

[22] *Nuisance Tripping Arc Fault Breaker Findings*, EB Horsman & Son (last visited, Oct. 11, 2021),  https://ebhorsman.com/blog/nuisance-tripping-arc-fault-breaker-findings
[23] *Id.*
[24] *Id.*

71.     Despite its knowledge of its defective breakers, Siemens never disclosed and actively concealed the issues with its AFCI breakers.  Siemens never warned the public that its AFCI breakers were subject to high rates of nuisance tripping even where no dangerous arc existed in the circuit or that tripping may be due to defects in its breakers rather than an actual arc.  Siemens AFCI breaker labels and brochures omit any information describing Siemens AFCI breakers trip when using common household appliances or in the presence of electronic noise, even when no arching is occurring in the circuit.  Siemens knew or should have known the types of appliances that were incompatible with its breakers and the sources of "electronic noise" that affected its breakers' performance.  It never disclosed these

72.     Siemens has also tried to deflect blame for any nuisance tripping of its AFCI. Siemens publicly claimed that nuisance tripping is a "myth" or, alternatively, that it is a good thing – a safety feature.  For instance, in 2017, one Siemens employee gave an interview to Electrical Contractor magazine, stating that:

> People believe that certain arc fault breakers are defective because they frequently trip.  People need to think of these not as 'nuisance tripping' but rather as 'safety alerts.' The majority of the time, these breakers trip because they are supposed to. They are tripping due to some type of arcing event on the circuit.[25]

73.     Siemens also put the blame on homeowners and electricians, claiming that any AFCI nuisance tripping was due to "'stab' receptacles, where wires are spring-loaded into the backs of the receptacles, instead of wiring around screws" or caused by "homeowners [who] jam plugs into spring-loaded receptacles or pull them out roughly[.]"[26]  Siemens reiterated that "this is not 'nuisance tripping'" but "is a 'safety alert.'"[27]

---

[25] William Atkinson, *Debunking Six AFCI Myths*, Electrical Contractor (May 1, 2017), https://www.ecmag.com/section/systems/debunking-six-afci-myths.
[26] *Id.*
[27] *Id.*

20

3601007 v1

74.     Similarly, in a presentation titled, "Debunking the Myths of AFCI" a Siemens employee claimed that nuisance tripping was the result of "creative wiring practices."[28]  Siemens further asserted that Siemens had created "Solutions" to nuisance tripping, including providing "excellent arc discrimination and enhanced electronics"[29] when its own testing of its breakers proved that it did not adequately distinguish between dangerous arcs and household appliances.

75.     In 2018, Siemens released a troubleshooting guide to provide "tips" on how to prevent tripping in its AFCI breakers.   The troubleshooting guide acknowledges that "[d]etermining the cause of an AFCI trip can be confusing and time-consuming" but claims its troubleshooting guide will provide a "few tricks [that] can save the homeowner, time, money, and the stress of an AFCI trip."[30]

76.     The guide claims that Siemens AFCI breakers "have been thoroughly tested to dramatically decrease the amount of nuisance tripping."[31]  The guide suggests that any nuisance tripping is due to the fault of the homeowner or the electrician.  For instance, the guide provides steps homeowners and electricians must take to decrease unwanted tripping:

**Homeowners**
There are six preventative factors homeowners can take in order to decrease the chance that a breaker will trip.
• First, all connections between the light socket and the light bulb base should be tight. An arc can occur in a loose connection, which will cause the AFCI breaker to trip.
• Beware that the circuit is not overloaded with an excessive amount of electronics. The breaker is only able to support a specified amount of wattage, and if exceeded, the breaker will trip.
• Protect electronics on surge protectors. They will protect the electronics from times of high electrical surges, like thunderstorms.

---

[28] Ashley Bryant, *Debunking the Myths of AFCI*, Indep. Electrical Contractors (2018), https://slidetodoc.com/debunking-the-myths-of-afci-presented-by-ashley/
[29] *Id.*
[30] *Troubleshooting Guide, supra*, note 15.
[31] *Id.*

• All electronics purchased should be Underwriters Laboratories (UL) listed, or equivalent, and comply with part 15 of the FCC rules, or they may cause unnecessary tripping.
• Make sure furniture is not on or pushing against electrical wires.
• If any blackened plugs, very damaged wires, or noisy circuit breakers are discovered, an electrical problem has occurred and the homeowner should call an electrician.

**Electrical Contractors**
Electrical contractors can also take some preventative steps during the installation process.
• Ensure properly maintained tools are used, i.e. sharp blades.
• Route wires in strategic areas so homeowners and other trades are less likely to pierce through a wire.
• If possible, perform work after the other trades, i.e. HVAC and plumbing, have completed.
•Wire receptacles around the screw instead of backstabbing; it creates great wear and tear on the wiring over time.[32]

77.     The guide, thus, implies that if an AFCI breaker is tripping, it is either because it has detected a dangerous arc or because of errors by the homeowner or electrician.  Like its brochures and labels, Siemens' troubleshooting guide never advises its customers that the problem might be with its AFCI breakers because, due to a defect, Siemens' AFCI breakers are prone to nuisance tripping in the presence of harmless arcs or due to the foreseeable use of basic household appliances.

78.     Siemens also created and advertised "innovated trip indicators" and "Siemens exclusive Intell-Arc Diagnostic Tool" that supposedly "offer help to the troubleshooting process."[33]  Like the troubleshooting guide, Siemens' bills these tools as means to help save time and money and identify the cause of a tripped breaker.   Siemens states that the "[i]ndustry exclusive LED indicators provide a valuable analysis tool to help electricians pinpoint the type of

---

[32] *Id.*
[33] *Id.*

trip."[34]    These tools, however, fail to notify homeowners, electricians, or other readers that the breaker may be tripping due to harmless arcs or that the cause of the nuisance tripping is a defect in the breaker itself.  Thus, these tools help conceal the underlying issue with Siemens' breakers and perpetuate Siemens' misrepresentation that nuisance tripping is the fault of the homeowner or electrician.

79.    Siemens knew or should have known that its AFCI breakers contain defects that cause them to experience high rates of nuisance tripping, and those defects are due to Siemens, not to the actions of homeowners or electricians.  Despite its claims to the contrary, an AFCI breaker is not functioning properly when it trips during the foreseeable, routine use of an appliance or due to electronic noise.  Indeed, Siemens' advertisements claim that its AFCI breaker are designed only to trip in the presence of arc faults: "The device is intended to mitigate the effects of arcing faults by functioning to de-energize the circuit when an arc fault is detected."[35]

80.    Siemens' own findings and the many complaints by electricians and homeowners demonstrated its AFCI breakers nuisance trip in many other circumstances.  Despite that fact, Siemens does not and has never warned users that its AFCI breakers nuisance trip due to defects in the breakers' ability to identify an actual arc or distinguish an actual arc from a normal appliance or electronic noise.  Rather, Siemens falsely claims nuisance tripping is a "myth" or, alternatively, that it is a safety feature.  That is not the case.  Siemens' AFCIs are defective and trip in inappropriate circumstances, causing homeowners and electricians harm.

---

[34] *Residential AFCI Breakers*, Siemens.com (last visited Apr. 7, 2021), https://new.siemens.com/us/en/products/energy/low-voltage/residential-circuit-residential-afci-circuit-breakers.html
[35] [cite]

C. **Plaintiffs Suffered Injuries Due to Defective Siemens' AFCI Breakers**

81.    Siemens recognized the significant time and effort that electricians and consumers might exhaust investigating an improperly tripping breaker.[36]    Rather than saving electricians time, as Siemens promised, its breakers result in wasted time and effort investigating the cause of the nuisance tripping when the fault is in the breaker itself.   Experienced electricians and consumers have spent an extraordinary amount of time investigating the possible causes of Siemens' AFCI breakers that frequently and unnecessarily trip only to find that harmless electrical arcs are improperly causing the Siemens' AFCI breaker to trip.

82.    Electricians and consumers, such as Plaintiffs, who purchased defective Siemen' AFCI breakers have lost the value of the breaker because, after performing extensive rework to identify the problem, the electrician or customer incurred costs replacing the defective Siemens' AFCI breaker which resolved the nuisance tripping.

**NSSS**

83.    NSSS is an Ohio company that provides a variety of security and electrical services to its customers.   For example, NSSS installs and replaces security devices, performs household wiring, installs electrical devices, investigates electrical issues, and installs panel boxes and circuit breakers.   NSSS is a member of the proposed Electrician Class.

84.    As part of its services, NSSS installs AFCI breakers, including Siemens' AFCI breakers.   It has purchased and installed Siemens' AFCI breakers within the last year, including some that later experienced issues with nuisance tripping.

---

[36] *Troubleshooting Guide*, *supra*, note 15 ("Determining the cause of an AFCI trip can be confusing and time-consuming . . . .")

85.     The State of Ohio, where NSSS principally operates, has adopted the NEC with some modifications.   Ohio requires AFCI protection (whether breakers or AFCI outlets) to be installed in practically all dwelling unit rooms, including kitchens, family rooms, dining rooms, living rooms, parlors, libraries, dens, bedrooms, sunrooms, recreational rooms, closets, hallways, laundry rooms, or similar areas.

86.     NSSS has significant experience installing AFCI breakers and resolving nuisance tripping.

87.     When installing Siemens' AFCI breakers, however, NSSS has found many of the breakers trip for no reason.   Even after investigating potential causes of the nuisance tripping, NSSS could not identify that any traditional had caused the nuisance tripping, including, spliced wires, appliances, incorrect installation, or other potential causes.

88.     Rather, the cause of the nuisance tripping was defective Siemens' AFCI breakers that failed to perform their basic function and repeatedly and unnecessarily tripped where no dangerous electrical arcing was occurring.

89.     Siemens' defective AFCI breakers have cost NSSS significant time and money. NSSS purchased hundreds of Siemens breakers.   NSSS has had to replace many, brand new Siemens' breakers because of nuisance tripping that occurred right out of the box.   NSSS lost the money it paid for the defective Siemens' AFCI breakers that it could not use because they were defective.   These costs were not passed on to NSSS's customers.

90.      In addition to the costs of the breakers, NSSS lost substantial, uncompensated time investigating and attempting to resolve the cause of the tripping.   As Siemens troubleshooting guide indicates, a trip may have several causes attributable to the wiring or appliances in the circuit. Siemens' guide, however, does not state that the tripping may be due to a defective breaker.  NSSS,

therefore, spent time needlessly investigating the potential cause of the tripping when the true cause was Siemens' defective breakers.  NSSS was not compensated for this time by its customers.

### Electricalifornia

91.     Electricalifornia is a sole proprietorship owed by Drew Montoya and located in the State of California.

92.     Drew is an electrician with 15 years of experience.   In 2016, he started Electricalifornia as an electrical company that provides household and commercial electrical services, including wiring, installing electrical devices, investigating electrical issues, and installing panel boxes and circuit breakers.  Electricalifornia is a member of the Electrician Class.

93.     As part of its services, Electricalifornia purchases and installs AFCI breakers, including Siemens' AFCI breakers.  It has purchased and installed Siemens' AFCI breakers within the last year, including breakers that experiences nuisance tripping.

94.     The State of California, where Electricalifornia principally operates, has adopted the NEC with some modifications.  California requires AFCI protection (whether breakers or AFCI outlets) to be installed in practically all dwelling unit rooms, including kitchens, family rooms, dining rooms, living rooms, parlors, libraries, dens, bedrooms, sunrooms, recreational rooms, closets, hallways, laundry rooms, or similar areas.

95.     Electricalifornia has significant experience installing AFCI breakers and resolving nuisance tripping.

96.     When installing Siemens' AFCI breakers, however, Electricalifornia has found many of the breakers trip for no reason.  Even after investigating potential causes of the nuisance tripping, Electricalifornia could not identify the cause of the nuisance tripping, including potential issues like spliced wires, appliances, incorrect installation, or other potential causes.

97.     Rather, the cause of the nuisance tripping was defective Siemens' AFCI breakers that failed to perform their basic function and repeatedly and unnecessarily tripped where no dangerous electrical arcing was occurring.

98.     Siemens' defective AFCI breakers have cost Electricalifornia significant time and money.  Electricalifornia has purchased hundreds of Siemens breakers and has had to replace many, brand new Siemens' breakers because of nuisance tripping that occurred right out of the box.  Electricalifornia lost the money it paid for the defective Siemens' AFCI breakers that it could not use because they were defective.  These costs were not passed on to Electricalifornia's customers.

99.     In addition to the costs of the breakers, Electricalifornia lost substantial, uncompensated time investigating and attempting to resolve the cause of the tripping.  As Siemens troubleshooting guide indicates, a trip may have several causes attributable to the wiring or appliances in the circuit.  Siemens' guide, however, does not state that the tripping may be due to a defective breaker.  Electricalifornia, therefore, spent time needlessly investigating the potential cause of the tripping when the true cause was Siemens' defective breakers.  Electricalifornia was not compensated for this time by its customers.

### Rick Keyser

100.    Plaintiff Keyser is a resident of the State of Nebraska and is a trained and certified electrician.

101.    Starting in 2019 and continuing through early 2020, Keyser began the process of building his new home.  Keyser, as a trained and certified electrician, performed the electrical work throughout the house, including wiring and installing the panel boxes and circuit breakers. He ensured his house complied with Nebraska's electrical code.

102.     Nebraska has adopted the 2017 NEC and is in the process of implementing the 2020 NEC, which will not be completed until mid-2021.    The 2017 NEC requires AFCI protection for all 120-volt, single-phase, 15 and 20-ampre branch circuits, including in most rooms in a home.

103.     Keyser's home has a Siemens' electrical panel.  As such, Keyser purchased new Siemens circuit breakers, including Siemens' AFCI breakers and installed them in his Siemens' panel.  All the AFCI breakers were purchased new from a local Menards and came in their original packaging.

104.     Several of the Siemens' AFCI breakers, however, did not function appropriately. Rather, upon installation, the AFCI breakers would frequently and unexpectedly trip.  Keyser investigated potential causes for the unexpected tripping, including examining the wire switch boxes.  However, Keyser could find no explanation for the nuisance tripping.

105.     The frequent nuisance tripping made the defective Siemens' AFCI breakers unusable.  As such, Keyser replaced the defective AFCI breakers with new ones made by a different manufacturer.  Upon replacing the defective breakers, the nuisance tripping stopped.

106.     Keyser suffered injuries as a result of the defective Siemens' AFCI breakers. Specifically, he lost the value he paid for the defective Siemens' AFCI breakers and paid more for the breakers than he would have had he known they contained a defect.

**Tyler Barrette**

107.     Tyler Barrette is a consumer who at all times relevant to this action resided in Rochester, New Hampshire.

108.     In 2020, Barrette purchased a new home, which was a new build containing a new Siemens electrical panel, which itself contained new Siemens AFCI breakers.

109.     Almost immediately after moving into his new home, Barrette started experiencing frequent tripping in his Siemens AFCI breakers.

110.     Barrette called an electrician to investigate the issues; the electrician found no evidence of dangerous arcing causing the tripping.  The electrician replaced the malfunctioning Siemens AFCI breakers with brand-new Siemens AFCI breakers.  However, the nuisance tripping continued even with the new breakers installed.

111.     As a stopgap measure, the electrician replaced the Siemens AFCI breakers with a competitor's AFCI breakers, specifically, those made by Square D.  Upon installation of the Square D AFCI breaker, the nuisance tripping stopped.

112.     The electrician informed Barrette, however, that building code prohibited leaving a non-Siemens AFCI breaker in the Siemens electrical panel box.  As a result, Barrette was required to pay approximately $1,500.00 to replace the entire Siemens panel and all of the Siemens AFCI breakers with a competitor's products in his new home.

113.     Barrette has not had issues with nuisance tripping in his home since the Siemens panel and Siemens AFCI breakers were removed.

114.     Barrette suffered injury as a result of Siemens' defective AFCI breakers.  Not only was he required to pay for a new Siemens panel and AFCI breakers as part of purchasing his new home, he had to purchase an entirely new panel and set of breakers when Siemens' AFCI breakers failed to function as intended.

## CLASS ALLEGATIONS

115.     Plaintiffs brings this action on behalf of themselves and all other similarly situated Class members pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Classes:

3601007 v1

**Consumer Class.** Any person in the United States who purchased a Siemens' AFCI breaker, except for resale.

**Electrician Class.** Any electrician or electrical business in the United States that installed and investigated, resolved, or attempted to resolve tripping presented by a Siemens' AFCI breaker.

116.    The Class Period for both the Consumer Class and the Electrician Class being starting from the length of the greatest applicable statute of limitations to the present.

117.    In the alternative, Plaintiffs propose the following subclasses:

**Nebraska Subclass.** Any person or business entity located in Nebraska who purchased a Siemens AFCI breaker.

**Ohio Subclass**. Any person or business entity located in Ohio who purchased a Siemens AFCI breaker.

**California Subclass.**  Any person or entity located in California who purchased a Siemens AFCI breaker.

**New Hampshire Subclass**.  Any person or entity located in New Hampshire who purchased a Siemens AFCI breaker.

118.    Plaintiffs reserve the right to modify the class definition or to add additional sub-classes.

119.    **Numerosity.**  Consistent with Rule 23(a)(1), both Classes are so numerous and geographically dispersed that joinder of all Class members is impracticable.  Plaintiffs believe that there are tens of thousands, if not more, members of both the Consumer Class and Electrician Class.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

120.    **Commonality and Predominance.**  Consistent with Fed. R. Civ. P. 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common question of law and fact

30

that predominate over any questions affecting individual Class members. These common questions include, but are not limited to:

a. Whether Siemens' AFCI breakers contain an inherent or manufactured defect that causes them to unnecessarily trip in the presence of harmless electrical arcs;

b. Whether Siemens misled consumers and electricians or omitted information about the ability of its AFCI breakers to function properly and trip only in the presence of dangerous arcs;

c. Whether consumers were harmed when they purchased defective Siemens' AFCI breakers that frequently and unnecessarily tripped;

d. Whether electricians were harmed when they incurred costs and lost time investigating the cause of and attempting to resolve nuisance tripping of Siemens' defective AFCI breakers;

e. Whether Siemens defective AFCI breakers violated its warranty of merchantability;

f. Whether Siemens was unjustly enriched by selling defective AFCI breakers that did not function as represented; and,

g. Whether the Consumer Class and Electrician Class are entitled to damages or other relief.

121.   **Typicality**.  Consistent with Fed. R. Civ. P. 23(a)(3), NSSS and Electricalifornia are typical of members of the Electrician Class and Keyser and Barrette are typical of members of the Consumer Class.  NSSS and Electricalifornia are electrical services companies that purchased and installed Siemens' AFCI breakers and lost time and money, including the cost of defective

31

Siemens' breakers, and uncompensated time investigating nuisance tripping of Siemens' breakers that it ultimately had to replace.  Plaintiff Keyser purchased Siemens' AFCI breakers and installed them in a Siemens electrical panel at his residence but, because of frequent and unexplained tripping, Plaintiff Keyser replaced several Siemens' AFCI breakers.  Plaintiff Barrette purchased Siemens' AFCI breakers in connection with purchasing a new home, which he had to pay to replace because of nuisance tripping.  Plaintiffs NSSS and Electricalifornia suffered injuries similar to those suffered by other members of the Electrician Class and Keyser's and Barrette's injuries are akin to those of the Consumer Class.  Plaintiffs seeks relief consistent with the relief owing to both Classes.

122.   **Adequacy**.   Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiffs are adequate representatives of the Class because Plaintiffs NSSS and Electricalifornia are members of the Electrician Class and Plaintiffs Keyser and Barrette are members of the Consumer Class and all are committed to pursuing this matter to obtain relief for themselves and for both proposed Classes. Plaintiffs have no conflict of interest with the Class.  Plaintiffs also retained counsel competent and experienced in complex class action litigation.  Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

123.   **Superiority**.  Consistent with Fed. R. Civ. P 23(b)(3), class action litigation is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiff may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the Class may be relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus,

individual litigation to redress Defendant's wrongful conduct would be impracticable.  Individual litigation by each Class member would also strain the court system, create the potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**CLAIMS**

**COUNT I**

**Fraudulent Concealment**

**(On behalf of the Consumer Class and the Electrician Class)**

124.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

125.     Siemens fraudulently concealed the defects in its AFCI breakers.

126.     Siemens was put on notice that its AFCI breakers were defective by among other things, the numerous public complaints it received claiming that its AFCI breakers were suffering from repeated and unexplained nuisance tripping.  NEMA identified nuisance tripping as a potential problem for AFCI breakers as early as 2011.  Subsequently, electricians and consumers, both publicly and to Siemens directly, notified Siemens that its AFCI breakers were suffering from nuisance tripping.

127.     Siemens had a duty to disclose any defect in its AFCI breakers.  Siemens knew of the harm created by defective breakers that suffered repeated nuisance tripping.  Indeed, in its troubleshooting guide, Siemens writes that "[d]etermining the cause of an AFCI trip can be confusing and time-consuming."  Thus, Siemens knew that, should it make available for purchase defective AFCI breakers that frequently and unnecessarily trip, Plaintiffs would suffer harm.

128.     Siemens, however, concealed defects in its AFCI breakers that caused the breakers to trip in the presence of harmless arcs and suffer from nuisance tripping.  Siemens represented that its products "have been thoroughly tested to dramatically decrease the amount of nuisance tripping."  It, furthermore, represents that its AFCI breakers will function properly to "mitigate the effects of arcing faults by functioning to de-energize a circuit when an arc-fault is detected."

129.     When Siemens' AFCI breakers trip unexpectedly and unnecessarily, Siemens puts the blame on homeowners and electricians.  Siemens issued a "troubleshooting" guide for homeowners and electricians that supposedly explained the causes of a tripped breaker. However, the guide only lists potential causes of nuisance tripping that blame the homeowner or electrician. Siemens never states that the problem may be a defect in the AFCI breaker that causes it to unnecessarily trip in the presence of harmless arcs.

130.     Similarly, Siemens placed an "indicator" on its AFCI breakers and provides an Intelli-Arc Diagnostic tool, both of which conceal the fact that the nuisance tripping may be caused by a defective breaker.

131.     The troubleshooting guide, the LED indicator, and the Intelli-Arc Diagnostic Tool therefore seek to deflect blame for the nuisance tripping and create the impression that any such tripping is caused by the actions taken by homeowners and electricians.  Through these tools and its representations that its AFCI breakers are "thoroughly tested" and "dramatically decrease the amount of nuisance tripping", the public, including homeowners and electricians alike, are led to believe that any nuisance tripping is due to some other cause, not due to Siemens' breakers.

132.     Plaintiffs were not on actual or constructive notice of the defect, in part, because of Siemens' representations that any nuisance tripping is not due to its breakers, but incorrectly due to the fault of the homeowner or electrician.

133.    Siemens' fraudulent concealment of defects in its AFCI breakers caused Plaintiffs' injuries.  Plaintiffs purchased Siemens' AFCI breakers and paid a premium for Siemens' AFCI breaker because Siemens represented the AFCI breaker could perform functions that the breaker did not perform and that, any nuisance tripping of the breaker was not due to any defect.  Plaintiffs lost the value of the AFCI breaker when they suffered from frequent, and unnecessary nuisance tripping.  Plaintiffs NSSS and Electricalifornia also suffered harm investigating the potential causes of nuisance tripping when, in reality, the issue was Siemens' defective AFCI breaker.

134.    Plaintiff, therefore, seeks all remedies available to him for Siemens' fraudulent concealment.

## COUNT II

## Negligent Omission

### (On behalf of the Consumer Class and the Electrician Class)

135.    Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

136.    Siemens negligently omitted the defects in its AFCI breakers.

137.    Siemens knew or should have known its AFCI breakers were defective from, among other things, the numerous public complaints it received attesting that its AFCI breakers were suffering repeated nuisance tripping and the supposedly thorough testing of its AFCI breakers.  NEMA identified nuisance tripping as a potential problem for AFCI breakers as early as 2011.  Subsequently, electricians and consumers, both publicly and to Siemens directly, notified Siemens that its AFCI breakers were suffering from nuisance tripping.

138.    Siemens had a duty to disclose any defect in its AFCI breakers.  Siemens knew of the harm created by defective breakers that suffered repeated nuisance tripping.  Indeed, in its troubleshooting guide, Siemens writes that "[d]etermining the cause of an AFCI trip can be

confusing and time-consuming."   Thus, Siemens knew that, should it make available for purchase defective AFCI breakers that frequently and unnecessarily trip, Plaintiffs would suffer harm.

139.    Siemens, however, concealed defects in its AFCI breakers that caused the breakers to trip in the presence of harmless arcs and suffer from nuisance tripping.  Siemens represented that its products "have been thoroughly tested to dramatically decrease the amount of nuisance tripping."  It, furthermore, represents that AFCI breakers will function properly to "mitigate the effects of arcing faults by functioning to de-energize a circuit when an arc-fault is detected."[37]

140.    When Siemens' AFCI breakers trip unexpectedly and unnecessarily, Siemens puts the blame on homeowners and electricians.  Siemens issued a "troubleshooting" guide for homeowners and electricians that supposedly explained the causes of a tripped breaker. However, the guide only lists potential causes of nuisance tripping that blame the homeowner or electrician. Siemens never states that the problem may be a defect in the AFCI breaker that causes it to unnecessarily trip in the presence of harmless arcs.

141.    Similarly, Siemens placed an "indicator" on its AFCI breakers and provides an Intelli-Arc Diagnostic tool, both of which conceal the fact that the nuisance tripping may be caused by a defective breaker.

142.    The troubleshooting guide, the LED indicator, and the Intelli-Arc Diagnostic Tool therefore seek to deflect blame for the nuisance tripping and create the impression that any such tripping is caused by the actions taken by homeowners and electricians.  Through these tools and its representations that its AFCI breakers are "thoroughly tested" and "dramatically decrease the

---

[37] Siemens, *supra* note 11.

amount of nuisance tripping", the public, including homeowners and electricians alike, are led to believe that any nuisance tripping is due to some other cause, not due to Siemens' breakers.

143.    Siemens' negligent omission of the defects of its AFCI breakers caused Plaintiffs' injuries.  Plaintiffs purchased Siemens' AFCI breakers and paid a premium for Siemens' AFCI breaker because Siemens represented the AFCI breaker could perform functions that the breaker did not perform and that, any nuisance tripping of the breaker was not due to any defect.  Plaintiffs lost the value of the AFCI breaker when they suffered from frequent, and unnecessary nuisance tripping.  Plaintiffs NSSS and Electricalifornia also suffered harm investigating the potential causes of nuisance tripping when, in reality, the issue was Siemens' defective AFCI breaker.

144.    Plaintiff, therefore, seeks all remedies available to him for Siemens' negligent omission.

## COUNT III

### Breach of the Implied Warranty of Merchantability

### (On behalf of the Consumer Class and the Electrician Class)

145.    Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

146.    Siemens' AFCI breakers are subject to an implied warranty of merchantability, as defined in U.C.C. § 2-314.  Georgia, where Siemens is headquartered, and Ohio, California, and Nebraska, where the Plaintiffs reside, have each adopted the UCC.

147.    "[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  *Id.* at § 2-314(1).

148.    To be "merchantable," goods must be "in the case of fungible goods, are of fair average quality within the description[,]" "fit for their ordinary purposes for which such goods are used[,]" "run, within the variations permitted by the agreement, of any kind, quality, and quantity

within each unit and among all units involved[,]" and "conform to the promises or affirmations of fact made on the container or label if any" *Id.* at § 2-314(2)(a), (b), (d), (f).

149.    As described herein, the Siemens' AFCI breakers sold to Plaintiffs and members of the Class were not of average quality, were not fit for their ordinary purpose, were not within the variations of quality permitted, and did not conform to Siemens' representations.

150.    Siemens represented that its AFCI breakers were fit for use in residential homes. To be fit for residential use, AFCI breakers must be capable of distinguishing between harmless electrical arcs, which commonly occur in residential areas, and dangerous electrical arcs which pose a risk of an electrical fire or injury.  Properly functioning AFCI breakers should identify and trip only upon detecting a dangerous electrical arc.

151.    Siemens' AFCI breakers, however, tripped in the presence of harmless arcs that commonly occur in residences and do not present a danger of a fire.  As a result, Siemens' AFCI breakers are effectively unusable in residential panel boxes because they will frequently and needless trip, rending the outlets and appliances connected in the breaker's circuit unable to be used.

152.    Plaintiffs have found the only solution to the needless tripping is to replace the defective Siemens' AFCI breakers.

153.    Siemens' AFCI breakers, therefore, do not perform the function Siemens represented and that an AFCI breaker is intended and required to perform.

154.    Siemens' breach of its implied warranties of merchantability injured Plaintiffs and members of the Electricians Class and Consumers Class.

## COUNT IV

### Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

### (On behalf of the Consumer Class)

155.   Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

156.   Plaintiffs Keyser, Barrette, and members of the Consumer class are "consumers" as identified in 15 U.S.C. § 2301(3).

157.   Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. §§ 2301(4) and (5).

158.   Siemens' AFCI breakers are a "consumer product" as defined in 15 U.S.C. § 2301(6). 15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

159.   15 U.S.C. § 2304(a)(1) requires Defendant, as warrantor, to remedy any defect, malfunction or nonconformance of its AFCI breakers within a reasonable time and without charge to the Plaintiff and class members.

160.   As described herein, Siemens' AFCI breakers violated the warranty of merchantability because they were not fit to be used as AFCI breakers due to their frequent and unnecessary tripping, and inability to distinguish between harmless and dangerous arcs.  That function is required for any AFCI breaker.

161.   As a result of Defendant's breaches of its warranties, and Defendant's failure to remedy the same within a reasonable time and without charge to Plaintiff and class members, Plaintiff and class members have suffered damages.

## COUNT V

## Unjust Enrichment

### (On behalf of the Consumer Class and Electrician Class)

162.    Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

163.    As described herein, Defendant created and sold AFCI breakers that were not capable of performing the basic, required function of an AFCI breaker—to identify and distinguish between harmless arcs, where the breaker should not trip, and dangerous arcs, when the breaker should trip.

164.    Defendant generated profits by selling defective AFCI breakers to Plaintiffs and members of the Class.  Siemens fully knew that its AFCI breakers were prone to nuisance tripping.  Indeed, Siemens provided a "troubleshooting" guide for electricians and homeowners to use to resolve any issues with nuisance tripping.  However, Siemens never disclosed that the nuisance tripping may be caused by its defective AFCI breaker.

165.    Defendant, therefore, has been knowingly and unjustly enriched at the expense of and to the detriment of Plaintiffs and the members of the Class by collecting excess profits to which Defendant is not entitled.

166.    Defendant has unjustly retained those ill-gotten gains and should be required to disgorge this unjust enrichment.

## COUNT VI

## Violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.*

### (Plaintiff Keyser on behalf of the alternative Nebraska Subclass)

167.     Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

168.    Nebraska's Consumer Protection Act ("NCPA") prohibits the use of "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Neb. Rev. Stat. § 59-1602.

169.    "Any person who is injured in his or her business or property by a violation of sections 59-1602 . . ., whether such injured person dealt directly or indirectly with the defendants . . . may bring a civil action in the district court to enjoin further violations, to recover the actual damages sustained by him or her, or both, together with the costs of the suit[.]"

170.    A "Person" under the NCPA includes "natural persons, corporations, trusts, unincorporated associations, partnerships, and limited liability companies[.]" *Id.* at 59-1601(B).

171.    "Trade and commerce" under the NCPA means "the sale of assets or services and any commerce directly or indirectly affecting the people of the State of Nebraska[.]" *Id.* at § 59-1601(2). "Assets" means "any property, tangible, or intangible, real, personal, or mixed, and whatever situated, and any other think of value." *Id.* at § 59-1601(3).

172.    Plaintiff Keyser is a Person as defined under the CSPA.

173.    Siemens' conduct constituted an "unfair method of competition and unfair or deceptive act or practice" because Siemens made available for sale defective AFCI breakers that it knew, or should have known, failed to perform as promised. Specifically, Siemens' AFCI breakers failed to perform the essential and promised purpose of an AFCI breaker because they tripped even where no dangerous electrical arcing was present. Siemens should have known it had made available for sale defective AFCI breakers because of the numerous complaints stating Siemens AFCI breakers suffered from nuisance tripping that was not caused by dangerous electrical arcing. Despite knowing it had made defective AFCI breakers available for sale, Siemens did not inform Plaintiffs, the public, or other vendors of the issues with its breakers.

41

174.    Siemens actions constitute "trade and commerce" under the NCPA because Siemens sold Siemens AFCI breakers to vendors, who in turn sold the AFCI breakers to Plaintiffs and the Class and therefore, Siemens was involved directly and indirectly in the "sale of assets", including tangible goods.

175.    Plaintiff Keyser suffered harm due to Siemens' unfair and deceptive acts.  Plaintiff Keyser purchased defective Siemens' AFCI breakers that failed to perform their essential purpose and needed to be replaced.  Even though Siemens was aware that its AFCI breakers were defective, it did not disclose this fact to Plaintiff. Had he known Siemens made available for sale defective AFCI breakers, he would not have purchased them or would have paid less than he did.

176.    Plaintiff, therefore, seeks all remedies available to him for Siemens' breach of the NCPA.

## COUNT VII

### Violation of the New Hampshire Consumer Protection Act ("NHCPA"),

### N.H. Rev. Stat. § 358-A, *et seq*.

### (Plaintiff Tyler Barrette on behalf of the New Hampshire Subclass)

177.    Plaintiffs reallege all foregoing paragraphs as though fully set forth herein.

178.    According to the New Hampshire's NHCPA, N.H. Rv. Stat. § 358-A:2:

It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following:

\*\*\*

VII. Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

\*\*\*

IX. Advertising goods or services with intent not to sell them as advertised[.]

The enumerated list of specific violations contained in the NHCPA are not exhaustive. The NHCPA also makes unlawful any other business practice that rises to the "level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."

179.   In turn, the NHCPA, N.H. Rev. Stat. § 358-A:1 states, "'Trade' and 'commerce' shall include the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this state."

180.   No reasonable consumer would expect to have to replace a new electrical panel and new AFCI breakers contained within a newly constructed and purchased home due to a defect.

181.   Siemens violated the NHCPA by selling AFCI breakers that it knew were not up to the standard, quality, or grade Siemens represented them to be.

182.   Specifically, Siemens marketed and sold AFCI breakers that could not perform the basic and required function of AFCI breakers. While properly functioning AFCI breakers should only trip in the presence of potentially dangerous electrical arcs, defective Siemens' breakers trip in the presence of routine, expected, and harmless arcs. As a result, Siemens' AFCI breakers do not perform the function for which Siemens advertises and promotes them.

183.   At best, defective Siemens' AFCI breakers were only capable of adequately performing the functions of standard circuit breakers—acting as a switch and tripping in the presence of unsafe current levels. Standard circuit breakers, however, are significantly cheaper than AFCI breakers.

43

3601007 v1

184.   At worst, defective Siemens' AFCI breakers had no value because they could not be used without frequent and unnecessary nuisance tripping.

185.   Siemens marketed and sold its AFCI breakers as if they were properly functioning and charged consumers a premium to purchase its AFCI breakers.  Even though Siemens was aware that its AFCI breakers were defective, it did not disclose this fact to purchasers of its products.

186.   As a result, and as a result of the misconduct otherwise described herein, Plaintiff Barrette suffered economic injury.

187.   Plaintiff Barrette seeks all remedies available at law and equity under the NHCPA on behalf of himself and on behalf of the Class and Subclasses he seeks to represent, including but not limited to reasonable attorneys' fees and costs.

## COUNT VIII

### Violation of the California Unfair Competition Law ("UCL")

### (Plaintiff Electricalifornia on behalf of the alternative California Subclass)

188.   Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

189.   California's UCL makes unlawful for any person to commit an act of "unfair competition", including "any unlawful unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."  Cal. Civ. Code § 72000.  "[U]nfair competition" is interpreted broadly to include acts that violate other laws and may include acts event if not specifically proscribed by some other law.

190.   Siemens violated the UCL by engaging in conduct that constituted "unlawful . . . business practices", "unfair fraudulent business practices" and "unfair, deceptive or misleading advertising."  *Id.* at § 17200.

191.    Specifically, Siemens acted unfairly and deceptively by making available for sale AFCI breakers that could not perform the basic and required function of AFCI breakers.  While properly functioning AFCI breakers should only trip in the presence of potentially dangerous electrical arcs, defective Siemens' breakers trip in the presence of routine, expected, and harmless arcs.  As a result, Siemens' AFCI breakers do not perform the function for which Siemens advertises and promotes its AFCI breakers.

192.    At best, defective Siemens' AFCI breakers are only capable of adequately performing the functions of standard circuit breakers—acting as a switch and tripping in the presence of unsafe current levels.  Standard circuit breakers, however, are significantly cheaper than AFCI breakers.

193.    At worst, defective Siemens' AFCI breakers have no value because they cannot be used without frequent and unnecessary nuisance tripping.  Even brand-new Siemens' AFCI breakers will need to be replaced.

194.    Siemens, however, advertises and sells its AFCI breakers as if they are properly functioning and charges consumers a premium to purchase its AFCI breakers.  Even though Siemens is aware that its AFCI breakers are defective, it does not disclose this fact to purchasers of its products.

195.    Plaintiffs have been harmed by Siemens' violation of the UCL.  Plaintiffs have purchased Siemens AFCI breakers were defective and exhibited frequent nuisance tripping.  Plaintiffs only means of resolving the nuisance tripping was to replace the Siemens AFCI breaker with a new one.  NSSS and Electricalifornia, additionally, suffered additional harm due to uncompensated time and expenses spent investigating the potential causes of the nuisance tripping, only to discover the cause was Siemens' defective breaker.

196.    Had Plaintiffs known that Siemens' AFCI breakers were defective and could not function as promised, Plaintiffs would have purchased a competitor's AFCI breaker instead, or paid less for the Siemens' AFCI breakers.  Plaintiffs were injured when they purchased Siemens' AFCI breakers because they paid a premium for Siemens' AFCI breaker because Siemens represented the AFCI breaker could perform functions that the breaker did not perform, and because Plaintiffs lost the value of the AFCI breaker when they suffered from frequent, and unnecessary nuisance tripping.

197.    Plaintiffs pursue all remedies available under the UCL, including injunctive relief and restitution damages, and any other relief the Court deems proper.

## COUNT IX

### Violation of the California Consumers Legal Remedies Act ("CLRA")

### (Plaintiff Electricalifornia on behalf of the alternative California Subclass)

198.    Plaintiffs reallege the foregoing paragraphs as if fully set forth herein.

199.    California Consumers Legal Remedies Act ("CLRA") declares unlawful "methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal. Civ. Code § 1770.

200.    The CLRA defines the following acts as unlawful methods of competition:

(5) "Represent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses benefits, or quantities that they do not have . . .", *id*. at § 1770(a)(5).

(7)"Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another" *id*. at § 1770(a)(7);

3601007 v1

201.    Plaintiffs and the other Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

202.    Siemens committed unfair or deceptive acts or practices. Specifically, Siemens acted unfairly and deceptively by making available for sale AFCI breakers that could not perform the basic and required function of AFCI breakers.  While properly functioning AFCI breakers should only trip in the presence of potentially dangerous electrical arcs, defective Siemens breakers trip in the presence of routine, expected, and harmless arcs.  As a result, Siemens' AFCI breakers do not perform the function for which Siemens advertises and promotes its AFCI breakers.

203.    At best, defective Siemens' AFCI breakers are only capable of adequately performing the functions of standard circuit breakers—acting as a switch and tripping in the presence of unsafe current levels.  Standard circuit breakers, however, are significantly cheaper than AFCI breakers.

204.    At worst, defective Siemens' AFCI breakers have no value because they cannot be used without frequent and unnecessary nuisance tripping.  Even brand-new Siemens' AFCI breakers will need to be replaced.

205.    Siemens, however, advertises and sells its AFCI breakers as if they are properly functioning and charges consumers a premium to purchase its AFCI breakers.  Even though Siemens is aware that its AFCI breakers are defective, it does not disclose this fact to purchasers of its products.

206.    Plaintiffs have been harmed by Siemens' violation of the CLRA.  Plaintiffs have purchased Siemens AFCI breakers were defective and exhibited frequent nuisance tripping. Plaintiffs resolved the nuisance tripping by replacing the Siemens AFCI breaker with a new AFCI breaker.  NSSS and Electricalifornia, additionally, suffered additional harm due to uncompensated

47

time and expenses spent investigating the potential causes of the nuisance tripping, only to discover the cause was Siemens' defective breaker.

207.    Had Plaintiffs known that Siemens' AFCI breakers were defective and could not function as promised, Plaintiffs would have purchased a competitor's AFCI breaker instead, or paid less for the Siemens' AFCI breakers.  Plaintiffs were injured when they purchased Siemens' AFCI breakers because they paid a premium for Siemens' AFCI breaker because Siemens represented the AFCI breaker could perform functions that the breaker did not perform, and because Plaintiffs lost the value of the AFCI breaker when they suffered from frequent, and unnecessary nuisance tripping.

208.    In accordance with § 1782(a) of the CLRA, on April 13, 2021, Plaintiffs' served Siemens' counsel with notice of its alleged violations of the CLRA.  Siemens has not  met the demands of Plaintiffs' letter, thus. Plaintiffs seek actual damages, punitive damages, attorney's fees and costs, and any other relief the Court deems proper under Cal. Civ. Code § 1780(a)(5).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the Class, prays for the following relief:

a.    For an Order certifying the Class as defined above, appointing Plaintiffs as Class representative, and appointing Plaintiffs' counsel as Class counsel;

b.    For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiffs and Class Members,

c.    For equitable relief including disgorgement, unjust enrichment, and all other available relief under applicable law;

d.    For reasonable attorneys' fees and expenses as permitted by applicable law;

e.    For pre- and post-judgment interest as allowed by law; and,

f.    Such further relief at law or in equity that this Court deems just and proper.

3601007 v1

Dated: October 15, 2021

/s/ Brian C. Gudmundson
Brian C. Gudmundson (Admitted *pro hac vice*)
Jason P. Johnston (Admitted *pro hac vice*)
Michael J. Laird (Admitted *pro hac vice*)
Rachel K. Tack (Admitted *pro hac vice*)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
brian.gudmundson@zimmreed.com
jason.johnston@zimmreed.com
michael.laird@zimmreed.com
rachel.tack@zimmreed.com

Victoria S. Nugent (Bar ID 470800)
Brian E. Johnson (Bar ID 7383932)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 220025
Telephone (202) 408-4600
vnugent@cohenmilstein.com
bejohnson@cohenmilstein.com

Daniel E. Gustafson (*Pro hac vice* forthcoming)
Daniel C. Hedlund (Admitted *pro hac vice*)
David A. Goodwin (Admitted *pro hac vice*)
Mickey L. Stevens (*Pro hac vice* forthcoming)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
mstevens@gustafsongluek.com

*Attorneys for Plaintiffs*

3601007 v1